| | |
|---|---|
| LICHTEN & LISS-RIORDAN, P.C.<br>Shannon Liss-Riordan, Bar No. 310719<br>sliss@llrlaw.com<br>Thomas Fowler (*pro hac vice*)<br>tfowler@llrlaw.com<br>729 Boylston Street, Suite 2000<br>Boston, MA 02116<br>Tel: +1.617.994.5800<br>Fax: +1.617.994.5801<br><br>Attorneys for Plaintiff<br>WILLOW WREN TURKAL, on behalf of herself and all others similarly situated | MORGAN, LEWIS & BOCKIUS LLP<br>Eric Meckley, Bar No. 168181<br>eric.meckley@morganlewis.com<br>Brian D. Berry, Bar No. 229893<br>brian.berry@morganlewis.com<br>Roshni C. Kapoor, Bar No. 310612<br>roshni.kapoor@morganlewis.com<br>One Market, Spear Street Tower<br>San Francisco, CA 94105-1596<br>Tel: +1.415.442.1000<br>Fax: +1.415.442.1001<br><br>Additional counsel on next page |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLOW WREN TURKAL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., and X CORP.,<br><br>Defendant | Case No. 3:24-cv-04054-TSH<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>BEFORE THE HON. JUDGE MAXINE M. CHESNEY<br><br>Date: October 4, 2024<br><br>Time: 10:30 AM<br><br>PLACE: ZOOM CONFERENCE |

1  MORGAN, LEWIS & BOCKIUS LLP
   Ashlee N. Cherry, Bar No. 312731
2  ashlee.cherry@morganlewis.com
   Kassia Stephenson, Bar No. 336175
3  kassia.stephenson@morganlewis.com
   1400 Page Mill Road
4  Palo Alto, CA  94304
   Tel:    +1.650.843.4000
5  Fax:    +1.650.843.4001

6  MORGAN, LEWIS & BOCKIUS LLP
   Carolyn M. Corcoran, (*pro hac vice forthcoming*)
7  carolyn.corcoran@morganlewis.com
   101 Park Avenue
8  New York, NY 10178
   Tel:    +1.212.309.6000
9  Fax:    +1.212.309.6001

10 Attorneys for Defendant
   X CORP. f/k/a TWITTER, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                             JOINT CASE MANAGEMENT
                                        1                              STATEMENT

Plaintiff Willow Wren Turkal and Defendant X Corp., on its own behalf and as successor in interest to Twitter, Inc. (Plaintiff and Defendant shall be referred to as the "Parties"), by and through their respective counsel of record, hereby submit the following Joint Case Management Statement pursuant to Local Rule 16-9 and the Court's order at Dkt. 11, in advance of the Case Management Conference scheduled in this matter for October 4, 2024.

## I. JURISDICTION AND SERVICE

The Parties do not intend to raise any issues regarding personal or subject matter jurisdiction or venue at this time.

## II. FACTS

### A. Plaintiff's Factual Statement

Plaintiff contends that Twitter has engaged in unlawful discrimination on the basis of sex in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900, *et seq.*

As Plaintiff has alleged, Elon Musk purchased Twitter in late October 2022, and immediately began laying off more than half of its workforce. The decisions regarding which employees would be laid off were made under extremely hurried circumstances, and for thousands of employees, in a period just in a few days. In selecting employees for layoff, little attention (if any) was given to employees' job performance, qualifications, experience, and abilities. Most of the employees whom Twitter laid off were notified of their layoff on November 4, 2022. Plaintiff has alleged that the layoff decisions were made quickly by a small group of managers under close supervision by Musk. Some of these managers were brought in from other companies owned by Musk (such as Tesla), who did not have much, if any, knowledge about Twitter's operations.

Plaintiff alleges that Twitter's mass layoff affected women significantly more than men. In the midst of the layoff, the media reported on widely circulated pictures of Twitter employees before and after the layoff, raising observations about the stark contrast in the number of women who appeared to be employed at the company before and after Musk's acquisition. Spreadsheets

JOINT CASE MANAGEMENT STATEMENT

1  showing which Twitter employees in the United States were retained and which were laid off on
2  November 4, 2022, reveal that Twitter laid off approximately 57% of its female employees, while
3  only 47% of its male employees were laid off. Dr. Mark Killingsworth, a professor in the
4  Department of Economics at Rutgers University, performed a chi square analysis on this data and
5  determined that the odds that this disparity between women and men being laid off was due only
6  to chance is .00000000000001 (or, put another way, the odds were about 9.977 out of 100
7  trillion).

8  Likewise, Plaintiff alleges that this disparity cannot be explained based on a justification
9  that Musk intended to retain more employees in engineering-related roles. Twitter's spreadsheet
10 showed that the sex-based disparity was even starker for engineers - 63% of females in
11 engineering-related roles were laid off on November 4, 2022, compared to 48% of males. Dr.
12 Killingsworth determined that this disparity was also significantly significant and that the odds
13 that this disparity being due only to chance was .00000000000001 (or, put another way, 1.103
14 chances out of 100 trillion). Similarly, Plaintiff alleges that there is also a great disparity in the
15 layoff rates between women and men in non-engineering roles. The spreadsheet showing the
16 layoffs reveals that 51% of females in non-engineering-related roles were laid off on November 4,
17 2022, while only 42% of males in non-engineering-related roles were laid off. According to Dr.
18 Killingsworth, the odds that this disparity was due only to chance was .00001 (or, put another
19 way, 2.778 chances out of 100 thousand).

20 Plaintiff has alleged further that Twitter's discriminatory conduct in the layoffs is
21 unsurprising in light of the sexist, demeaning, and hostile comments that Elon Musk has made
22 against women. For example, it was widely publicized that Musk joked about naming a school
23 using the acronym "TITS"; he also joked about women's breasts on Twitter, tweeted
24 "Testosterone rocks ng", and made clear his belief that it was more important that women have a
25 lot of babies rather than pursuing careers.

26 In addition to laying off a highly statistically greater proportion of women than men in
27 Twitter's initial layoffs, Plaintiff alleges that Musk implemented a number of policies at the
28

3

JOINT CASE MANAGEMENT
STATEMENT

1  company that had a disproportionate negative impact on women. Such policy change included,
2  for example, ending Twitter's remote work policy and instead requiring that employees would be
3  required to work at Twitter's offices and requiring that employees work an unreasonable number
4  of hours. Musk would have known that these policy changes would have a disproportionate
5  impact on women, who are more often caregivers for children and other family members, and
6  thus not able to comply with such demands. Musk used these demands as a way to force more
7  employees out of their jobs, as he sent out an email to Twitter's employees on November 17,
8  2022 (just two weeks after the initial layoffs), giving them until the following day to inform the
9  company whether they agreed to work under the new conditions, which he said would require
10 being "extremely hardcore" and "working long hours at high intensity." This ultimatum was
11 intended as and ultimately did result in further layoffs. Approximately 36% of the remaining
12 women left the company after this ultimatum, while approximately 28% of the remaining men
13 did.
14         Initially, Plaintiff filed her claim in the United States District Court for the Northern
15 District of California, Strifling et al. v. Twitter, Inc. et al., Civ. Act. No. 4:22-cv-07739-JST (N.D.
16 Cal.). Because that matter was initiated prior to Plaintiff's obtaining a right-to-sue letter from the
17 California Department of Fair Housing & Development, the federal court dismissed the claim
18 without prejudice. See Strifling, Order Granting Motion to Dismiss at pp. 4-5. Before the federal
19 court granted Twitter's motion to dismiss, Plaintiff had obtained her right-to-sue letter. As such,
20 the plaintiffs in Strifling have filed an amended complaint that cures any deficiencies with respect
21 to the exhaustion of remedies. Nevertheless, Twitter filed a motion to dismiss arguing that
22 because administrative exhaustion under FEHA is jurisdictional and cannot be cured. Plaintiff
23 thus filed this matter in an abundance of caution to ensure that if the federal court held that failure
24 to exhaust the FEHA claim in Strifling could only be cured by filing a new lawsuit, Plaintiff
25 Turkal would have done so within the limitations period. On August 26, 2024, the Strifling court
26 entered an order rejecting the argument that the failure to exhaust the FEHA claim could not be
27
28

1  cured. Strifling, Dkt. 86 (N.D. Cal. Aug. 26, 2024). Nevertheless, Twitter has not waived its right
2  to appeal that decision, and this case remains pending.
3       As is explained in Section X *infra*, Plaintiff will oppose Twitter's motion to consolidate
4  Twitter's claim in Striling.
5       ***Defendant's Statement:***
6       Judge Tigar is already presiding over Plaintiff's claims in the *Carolina Bernal Strifling*
7  *and Willow Wren Turkal v. Twitter, Inc.* ("*Strifling*") action. This matter should be consolidated
8  with *Strifling*. *See infra* § X.
9       Plaintiff alleges disparate impact and disparate treatment claims on behalf of a sprawling
10 nationwide class of former female Twitter employees based on the theory that statistics alone
11 show that Twitter laid off a disproportionate number of women as compared to men when
12 conducting various reductions in force ("RIFs").
13      Plaintiff's theory lacks merit. Plaintiff cannot properly isolate and identify a specific
14 employment practice to challenge with a disparate impact claim. Nor can she establish causation.
15 Plaintiff offers only bottom-line statistics about the number of women laid-off in RIFs. She lacks
16 anecdotal evidence or specific factual allegations other than that an unidentified "small group of
17 managers" made RIF decisions "under extremely hurried circumstances, with little if any regard
18 given to employees' job performance, qualifications, experience, and abilities." Compl. ¶¶ 16,
19 18.
20      Twitter is an equal opportunity employer that does not discriminate on the basis of sex or
21 any other category protected by law. Twitter denies that it discriminated against Plaintiff on the
22 basis of sex.
23 **III.   LEGAL ISSUES**
24      ***Plaintiff's Statement:***
25      The parties agree that the primary legal issues presented by Plaintiff's lawsuit are: (1)
26 whether Twitter violated the FEHA, by implementing mass layoff in a manner that
27 disproportionately impacted women, and by implementing additional policies that had a
28

disproportionately negative impact on women; and (2) whether Plaintiff's claims may be certified as a class action under FRCP 23.

  ***Defendant's Statement:***

1. Whether this case should be consolidated with *Strifling*;
2. Whether Plaintiff's putative claims are suitable for resolution on a class basis under Rule 23;
3. Whether Twitter's yet-to-be-pleaded affirmative defenses would defeat or limit any purported liability;
4. Whether Plaintiff's and the putative class members are entitled to front- or back-pay, benefits, other economic or compensatory damages, or other equitable or monetary relief;
5. Whether Plaintiff's allegations related to disparate impact have merit;
6. Whether Plaintiff's allegations related to disparate treatment have merit;
7. Whether Plaintiff and the putative class members are entitled to fees, costs, or other forms of relief.

**IV. MOTIONS**

The Parties have not yet filed any motions in this case.

**V. AMENDMENT OF PLEADINGS**

  ***Plaintiff's Statement:***

Plaintiff has not filed any amended pleadings at this stage. Plaintiff reserves the right to seek leave to further amend their complaint should the circumstances warrant it.

  ***Defendant's Statement:***

Defendant has not yet filed a responsive pleading. The Parties have stipulated that Defendant's deadline to do so is October 11, 2024. Defendant believes this case should be consolidated with *Strifling*. *See infra* § X. Defendant further believes it is premature to set deadlines for the amendment of pleadings until the case is at issue.

**VI. EVIDENCE PRESERVATION**

1   The Parties have reviewed the Guidelines Relating to the Discovery of Electronically
Stored Information ("ESI Guidelines") and have complied with their evidence preservation obligations.

**VII.   DISCLOSURES**

The Parties have yet to exchange their initial disclosures. Pursuant to Fed. R. Civ. P. 26(a)(1)(C), the Parties have agreed to exchange initial disclosures within fourteen (14) days of the filing of Twitter's responsive pleading.

**VIII.   DISCOVERY**

*Plaintiff's Statement:*

The Parties agree to begin discovery following the Court's ruling on following the filing of Twitter's responsive pleading.  The parties intend to conduct written discovery and depositions.

Plaintiff proposes that the discovery period shall continue until 60 days after the close of the class action opt-out period, should the Court certify this case as a class action.  If the Court declines to certify this case as a class action, the discovery period shall close 60 days after the Court's denial of Plaintiff's request for class certification. Plaintiff opposes Twitter's proposal to bifurcate discovery into two phases, as it will unnecessarily complicate and delay the case.

*Defendant's Statement:*

If this case proceeds to discovery, the Parties should conduct discovery in two phases with the first phase focusing on discovery needed for a class certification motion and a second phase if any, focusing on additional merits issues.

Twitter anticipates taking discovery on all issues raised by Plaintiff in her then-operative complaint.  Twitter anticipates serving written discovery and deposing Plaintiff, any individual who files a declaration in support of or on behalf of Plaintiff and her claims, and a portion of the putative class members.  Twitter does not believe the Court should modify any limits on discovery in the Federal Rules of Civil Procedure at this time.  If the case proceeds to discovery, Twitter anticipates the Parties will stipulate to the Northern District of California's standard

protective order governing discovery.

Twitter proposes that the Court set deadlines related to discovery after it rules on any motion to certify a class.

## IX.  CLASS ACTION

All attorneys of record have reviewed the Procedural Guidance for Class Action Settlements for the Northern District of California.

***Plaintiff's Statement:***

Plaintiff intends to move for class certification, following some initial discovery.  Plaintiff is aware that numerous employees opted out of Twitter's arbitration agreement or began working for Twitter before it implemented its arbitration clause and thus do not believe that the existence of an arbitration agreement will defeat numerosity for a class action in this case. Plaintiff may move for class certification within 90 days of the beginning of discovery.

As required by Civil L.R. 16-9(a), Plaintiff states that a class is maintainable under Fed. R. Civ. P. 23(a) and 23(b)(3).  She will seek to certify classes consisting of all female Twitter who have lost their jobs since November 2022 (through layoffs, terminations, or constructive discharges).

The pertinent facts are set forth in the current complaint.  Plaintiff expects to develop and support these facts through discovery.  Briefly, Plaintiff states that she expect to satisfy Rule 23(a), based on numerosity (there are many female employees who have lost their jobs with Twitter since Elon Musk acquired the company); commonality (the claims of these employees will raise numerous common questions of fact and law); typicality (the named Plaintiff will have claims typical of the class); and adequacy (the named Plaintiff and her counsel will fairly and adequately represent the class).

Plaintiff expects to satisfy the requirements under Rule 23(b) based on similar facts, since it will clearly be superior to maintain a class action, for efficiency purposes, rather than require each of these class members to bring their own individual action, and the common questions of law and fact will predominate over any individual questions.

JOINT CASE MANAGEMENT STATEMENT

|   |   |
|---|---|
| 1 | *Defendant's Statement:* |
| 2 | This case should be consolidated with *Strifling*. *See infra* § X. Turkal should file any |
| 3 | class certification motion on her FEHA claim on the schedule that Judge Tigar sets in that case. |
| 4 | **X.    RELATED CASES** |
| 5 | *Plaintiff's Statement:* |

Below, Twitter has indicated that it intends to file a motion seeking to consolidate this matter with the case currently pending before Judge Tigar in <u>Strifling et al. v. Twitter, Inc. et al.</u>, Civ. Act. No. 4:22-cv-07739-JST (N.D. Cal.). As the Court knows, Plaintiff initially asserted her FEHA and Title VII claims in <u>Strifling</u>, but Twitter argued that the FEHA claim must be dismissed, because the case was filed before Plaintiff had obtained a right to sue letter. <u>See</u> Twitter's Motion to Dismiss Second Amended Complaint, <u>Strifling</u>, Dkt. 64. Although Plaintiff had since obtained a right to sue letter – thus curing the failure to exhaust – Twitter argued that, for the purposes for the FEHA, the failure to exhaust was a jurisdictional defect that could not be cured. <u>See</u> <u>id.</u> Thus, according to Twitter, the only solution was to file a new case (which Plaintiff did). Then, the <u>Strifling</u> Court rejected Twitter's argument regarding the ability to cure the failure to exhaust a FEHA claim. <u>See</u> <u>Strifling</u>, Dkt. 86 (N.D. Cal. Aug. 26, 2024). Twitter has expressly reserved its right to appeal that decision (in response to Plaintiff's inquiry), and thus the need for this case remains.

This matter should not be consolidated with <u>Strifling</u>. Plaintiff may choose to proceed with her claims in this case, rather than in <u>Strifling</u>. Such a move would eliminate the need for two cases to exist in which Plaintiff has asserted claims. It would be more proper for Ms. Turkal's cases to be asserted in this matter, as doing so would address any risk that Twitter could appeal Judge Tigar's decision on the ability to cure failure to exhaust under the FEHA. The claims would be properly in this case where she undoubtedly filed after receiving the right to sue notice. Moreover, Twitter's statement that it intends to move to consolidate this case with <u>Strifling</u> is deeply ironic, given that it has successfully opposed efforts to oppose Plaintiff's counsel's previous efforts to consolidate a number of discrimination cases they have filed related to the

1  same layoffs that occurred at Twitter, for the sake of efficiency. In particular, Plaintiff's counsel
2  moved to consolidate claims for age discrimination (Zeman v. Twitter, Inc. et al., Civ. Act. No.
3  3:23-cv-01786-SI (N.D. Cal.)), sex discrimination (Strifling), race and sex discrimination
4  (Weinberg et al. v. Twitter, Inc., Case No. 3:23-cv-04016 (N.D. Cal.)), and disability
5  discrimination (Borodaenko v. Twitter, Inc., Dkt. 58 (N.D. Cal. Aug. 15, 2023)), all related to
6  these layoffs. Twitter vehemently opposed these motions to relate or consolidate the cases, and
7  the court in Borodaenko denied the motions, holding that consolidation would not promote
8  judicial economy. Now that it benefits Twitter to consolidate, it is changing its position on this
9  question.

10  ***Defendant's Statement:***

11  Plaintiff is one of two named plaintiffs in the *Strifling* action that has been pending before
12  Judge Tigar since December 2022 (i.e., for over 20 months). *See* ECF No. 6.
13  In *Strifling*, Plaintiffs Strifling and Turkal both assert putative gender-discrimination class
14  claims under Title VII, and plaintiff Turkal asserts a putative gender-discrimination class claim
15  under FEHA. Judge Tigar granted Defendant's motion to dismiss the original complaint on May
16  8, 2023. Plaintiffs then filed a First Amended Complaint that exceeded the scope of their leave to
17  amend. In response, Defendant filed a motion to strike, which Judge Tigar granted on January 4,
18  2024. Plaintiffs then filed a Second Amended Complaint ("SAC"). Because Plaintiff Turkal did
19  not receive a Right to Sue letter from the California Civil Rights Division before filing her
20  putative FEHA class claim in *Strifling*, Defendant moved to dismiss her FEHA claim for failure
21  to exhaust administrative remedies, among other reasons.
22  While Defendant's motion to dismiss was pending, Plaintiff filed this standalone action
23  ("*Turkal*") in state court, alleging the identical gender-discrimination class claim under FEHA
24  that she alleges in *Strifling*. The Complaint itself acknowledges Turkal's claim-splitting. It
25  provides an overview of the procedural history in *Strifling* and then explains that Plaintiff filed
26  *Turkal* "***in an abundance of caution*** to ensure that if the federal court holds that failure to
27  exhaust the FEHA claim in *Strifling* could only be cured by filing a new lawsuit, Plaintiff Turkal

10

JOINT CASE MANAGEMENT
STATEMENT

1  will have done so within the one-year limitations period . . ." ECF 1 at 15 (Compl. ¶ 6) (emphasis
2  added).

3        Shortly after Defendant removed this action (*Turkal*) to this Court, the Parties stipulated
4  on July 8, 2024 to "extend Defendant's deadline to respond to the complaint by 60 days (i.e.,
5  September 6, 2024) in anticipation that the Court in *Strifling* will have ruled on the Motion by
6  that date, **which may moot this action**." ECF No. 6 at 2 (emphasis added).

7        On August 26, 2024, Judge Tigar granted Defendant's motion to dismiss the SAC in
8  *Strifling*. However, Judge Tigar declined to dismiss Turkal's FEHA claim on administrative
9  exhaustion grounds. As Plaintiff herself previously acknowledged (and in keeping with common
10 sense), that order should "moot" this action because Turkal filed the standalone action only "in an
11 abundance of caution" to protect against Judge Tigar potentially ruling that she had failed to
12 exhaust her administrative remedies, which he did not do.

13       On September 3, 2024, counsel for Defendant asked Plaintiff's counsel if Turkal was
14 planning to voluntarily dismiss this action in light of Judge Tigar's order. In response, Plaintiff
15 asked if Defendant would waive its right to appeal the administrative exhaustion issue. The next
16 day, Defendant expressed that it was inappropriate for Turkal to condition her voluntary dismissal
17 on a waiver of the right of appeal in *Strifling*, and the Parties agreed to stipulate to further extend
18 Defendant's responsive pleading deadline while they conferred further on case management
19 related to this action. In the same September 4 correspondence, counsel for Defendant wrote,
20 "under L.R. 3-12(b) and 7-11(a), please confirm that you will stipulate that the *Strifling and
21 Turkal* action is related to the *Turkal* action." Plaintiff did not respond to this request.

22       On September 23, 2024, counsel for Defendant reiterated in an email to Plaintiff's
23 counsel: "We need to resolve how to proceed with the standalone *Turkal* case. Short of a
24 voluntary dismissal, will you stipulate to consolidate *Turkal* with *Strifling and Turkal*? Please let
25 us know and we will prepare a stipulation." The next day, counsel for Defendant again wrote to
26 Plaintiff's counsel: "Please respond and let us know if you will stipulate to consolidation. The
27 standard for consolidation is easily satisfied: Turkal's claims are identical in the two cases, as she
28

has alleged in her standalone complaint and reiterated to the Court." Rather than answer the question, Plaintiff's counsel asked why Defendant is "so eager to consolidated these [cases]," and stated, "We could simply withdraw Ms. Turkal's claim from the Strifling case." In other words, Plaintiff is contemplating a judge-shopping maneuver where, after Judge Tigar granted successive motions to dismiss and strike against her, she would dismiss her claim from *Strifling* and try to proceed with her FEHA claim in this Court.

In response, on September 24, Defense counsel again asked if Turkal had a good faith basis for not stipulating to consolidation, given that **she has two identical lawsuits pending in this District at the same time**. To date, Plaintiff has not responded, despite repeated efforts by Defendant to engage her lawyers on this issue.

Notably, last year, after Judge Tigar issued his order dismissing the original complaint in *Strifling,* Plaintiff's counsel filed a motion to consolidate *Strifling* with two other discrimination class actions (alleging different claims than those in *Strifling*) that Plaintiff's counsel is pursuing in this District (*Borodaenko v. Twitter,* Case No. 22-cv-07226-AMO, and *Zeman v., Twitter*, Case No. 3:23-cv-01786-SI). The effect of consolidation would have been to re-assign *Strifling* to Judge Martinez-Olguin. In the Court's order denying the motion to consolidate, Judge Martinez-Olguin explained, "Twitter suggests that Plaintiffs' motion to consolidate is an effort to engage in judge shopping. ECF 49 at 17. It is difficult to disagree, particularly considering the timing of Plaintiffs' actions. **The Court does not countenance gamesmanship of this kind**." *Borodaenko* ECF No. 58 at 5, n. 2 (emphasis added).

Judge Martinez-Olguin's admonition appears to have fallen on deaf ears because Turkal's attorneys are considering dismissing her claim from the *Strifling* case—after multiple orders from Judge Tigar and 20 months of litigation—in a second attempt to have a different judge preside over the gender-discrimination claims in *Strifling*. That is the same kind of transparent gamesmanship for which Judge Martinez-Olguin criticized Plaintiff's counsel last year.

At bottom, Defendant will file an administrative motion to relate and consolidate this case with *Strifling* because Plaintiff's counsel refuses to cooperate in the ordinary meet-and-confer

1   process that is designed to limit the need to burden the Court and parties with unnecessary motion
2   practice.

3                                          * * *

4       On the night of this filing—and only after reviewing Defendant's recital of the events
5   above—Plaintiff decided for the first time to state her position on these issues.   Plaintiff now
6   says she will oppose consolidation.

7       First, she asserts that dismissing her claim from *Strifling* "would eliminate the need for
8   two cases to exist in which Plaintiff has asserted claims." But Plaintiff elected to engage in
9   claim-splitting.  And she represented to the Court that she did so out of "an abundance of
10  caution," recognizing that Judge Tigar's dismissal order might "moot" her complaint, which it
11  did.  Her current rationalization for claim-splitting, coupled with her interest in litigating the later-
12  filed action, only further supports an inference of judge-shopping.

13       Second, Plaintiff suggests (without explanation) that dismissing her claims in *Strifling*
14  and proceeding with this action "would address any risk that Twitter could appeal Judge Tigar's
15  decision on the ability to cure failure to exhaust under the FEHA."  Nonsense.  As Twitter
16  explained to Plaintiff's counsel in email correspondence to which they refused to respond,
17  consolidation would not create any appellate risks for Plaintiff because this complaint would still
18  remain on file and operative alongside her complaint in *Strifling*.

19       Third, Plaintiff contends that it is "deeply ironic" that Twitter seeks consolidation with
20  *Strifling* given that it opposed consolidation of other class cases.  The difference is that Plaintiff's
21  counsel's prior efforts to consolidate involved different discrimination claims (e.g., age vs.
22  disability vs. gender, among other differences), and Judge Martinez-Olguin recognized that the
23  belated filing of the motion to consolidate was an exercise in judge-shopping, given the
24  procedural context of the cases that they hoped to consolidate.  Here, by contrast, the Court is
25  confronted with the ***same*** claim brought by the ***same*** plaintiff against the ***same*** defendant based
26  on the ***same*** alleged facts.

27       A more obvious set of cases warranting consolidation is hard to imagine.

28

XI. **RELIEF**

*Plaintiffs' Statement:*

As set forth in the Complaint (Dkt. 1), Plaintiff seeks damages for Twitter's violations of the FEHA, including back pay, front pay, lost benefits, bonuses and equity, emotional distress damages, punitive damages, interest, and any other recoverable damages; attorneys' fees and costs; any and all other relief to which Plaintiff and the putative class may be entitled.

***Defendant's Statement:*** Twitter denies Plaintiff is entitled to any relief, either on an individual or class basis.

XII. **SETTLEMENT AND ADR**

*Plaintiff's Statement:*

The Parties have not engaged in mediation or settlement discussions.

*Defendant's Statement:*

Twitter believes settlement and ADR efforts are premature at this time.

XIII. **OTHER REFERENCES**

*Plaintiff's Statement*

Plaintiff does not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

*Defendant's Statement*

No references are requested or appropriate at this time.

XIV. **NARROWING OF ISSUES**

The Parties do not believe any issues can be narrowed by agreement at this time.

XV. **EXPEDITED TRIAL PROCEDURE**

The Parties do not believe that this case can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

XVI. **SCHEDULING**

*Plaintiff's Statement:*

Plaintiff proposes that discovery begin immediately following the filing of Twitter's

responsive pleading until 60 days after either the close of the opt-out period (should the Court certify this case as a class action) or the Court's denial of class certification.  Plaintiff would move for class certification within 90 days of the opening of discovery.

*Defendant's Statement:*

The Court should defer setting a schedule because this case should be consolidated with *Strifling*.  In addition, Defendant requests that the Court defer setting deadlines until after Defendant files its responsive pleading.

## XVII. TRIAL

*Plaintiff's Statement:*

Plaintiff requests that a trial be set in this matter for mid to late 2025.

*Defendant's Statement:*

Twitter believes it is premature to approximate the length of any trial in this action. Twitter also believes the Court should address a trial schedule only after it rules on any motion to certify a class, if this case proceeds beyond the pleading stage and Plaintiff files a motion to certify a class.

## XVIII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

### A.     Plaintiffs' Statement

Plaintiff will file her Certification of Interested Entities shortly. Other than the named parties, there is no such interest to report.

*Defendant's Statement:*

Twitter will file its Certification of Interested Entities or Persons prior to the conference.

## XIX. PROFESSIONAL CONDUCT

The Parties submit that their attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XX. MISCELLANEOUS

Not applicable.

| | | |
|---|---|---|
| Dated: September 27, 2024 | | LICHTEN & LISS-RIORDAN, P.C. |
| | By | */s/ Shannon Liss-Riordan* |
| | | Shannon Liss-Riordan |
| | | Thomas Fowler (*pro hac vice* forthcoming) |
| | | Attorneys for Plaintiff |
| | | WILLOW WREN TURKAL, on behalf of herself and all others similarly situated |

| | | |
|---|---|---|
| Dated: September 27, 2024 | | MORGAN, LEWIS & BOCKIUS LLP |
| | By | */s/ Brian D. Berry* |
| | | Eric Meckley |
| | | Brian D. Berry |
| | | Roshni C. Kapoor |
| | | Ashlee N. Cherry |
| | | Kassia Stephenson |
| | | Carolyn M. Corcoran |
| | | Attorneys for Defendant |
| | | X CORP. f/k/a TWITTER, INC. |

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendant Twitter, Inc. via the CM/ECF system on September 27, 2024.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan